AO91 (Rev. 10/03)  Criminal Complaint

# UNITED STATES DISTRICT COURT

**SOUTHERN** DISTRICT OF **TEXAS**

*FILED JAN 24 2013*
*David J. Bradley, Clerk of Court*
*United States Courts Southern District of Texas*

UNITED STATES OF AMERICA
V.

James Francis Sampsell, aka "Skitz"

**CRIMINAL COMPLAINT**

Case Number: H13-106M W

(Name and Address of Defendant)

I, the undersigned complainant, state that the following is true and correct to the best of my knowledge and belief. On or about **January 22, 2013** in **Montgomery** County, in

(Date)

the Southern District of Texas defendant(s) did,

*(Track Statutory Language of Offense)*

unlawfully, knowingly and intentionally commit an offense defined in Title 21 United States Code, Section 841 (a)(1), that is, to possess with the intent to distribute a controlled substance, to wit: a Schedule II Controlled Substance, commonly known as Methamphetamine, in an amount of 50 grams or more, in violation of Title __21__ United States Code, Sections(s) 841(a)(1), 841(b)(1)(C) & 841(b)(1)(A)(viii).

in violation of Title __21__ United States Code, Section(s) Sections(s) 841(a)(1), 841(b)(1)(C) & 841(b)(1)(A)(viii).

I further state that I am a(n) __State of Texas Police Officer__ and that this complaint is based on the

Official Title

facts related in the affidavit attached hereto and made a part of this complaint.

See attached Affidavit in Support of Criminal Complaint

Signature of Complainant

__Joshua D. Lyons__
Printed Name of Complainant

Sworn to before me and signed in my presence,
and, I find probable cause. __January 24, 2013__
Date

at __Houston, Texas__
City and State

__U.S. Magistrate Judge Frances H. Stacy__
Name and Title of Judicial Officer

Signature of Judicial Officer

**AFFIDAVIT FOR CRIMINAL COMPLAINT AGAINST JAMES FRANCIS SAMPSELL AKA SKITZ:**

I Joshua D. Lyons, hereinafter referred to as affiant, am a State of Texas Peace Officer employed as a Lieutenant with the Office of the Inspector General of the Texas Department Criminal Justice. I am currently assigned as a Task Force Officer with the FBI Houston Multi Agency Gang Task Force and have Title 18 and Title 21 authority.

On December 20, 2012, FBI Confidential Human Source (CHS) S-00052299 called affiant and said that James Francis Sampsell aka Skitz, white male, date of birth 07/04/1962, known to be the Region 3 General of the Aryan Brotherhood of Texas (ABT) was staying at the Cleveland Motel located off of Highway 59 in Cleveland, Texas and had ounces of crystal methamphetamine. The CHS was instructed to ask if Sampsell would sell a "friend" of the CHS one (1) ounce of crystal methamphetamine for $1400.00. The "friend" referenced was known to CHS and law enforcement to be an undercover law enforcement officer with the Texas Department of Public Safety (TXDPS), hereinafter referred to as UCO. CHS later contacted affiant and said that Sampsell agreed to the deal though CHS later re-contacted affiant and said that Sampsell would only sell ½ ounce of crystal methamphetamine for $700.00. Affiant later met with the CHS inside the Wal-Mart located at the intersection of FM 1314 and Highway 59 in Porter, Texas and provided the CHS with a recording device. Prior to the meeting with the CHS, affiant physically observed Sampsell with the CHS inside the Wal-Mart. CHS later contacted affiant and the UCO and advised that the CHS and Sampsell were in the parking lot of the Food Fair located near the intersection of FM 1485 and Highway 59 in New Caney, Texas and ready for the deal. Surveillance units observed Sampsell's red four-door Chevrolet Pick-up Truck with Texas License Plate BV2-7512 in the Food Fair parking lot and Sampsell sitting in the driver's seat. Sampsell did not want to deal straight with the "friend" (UCO) so Sampsell provided the ½ ounce of crystal methamphetamine to the CHS who in turn exited the red pick-up truck and walked to the UCO's vehicle. The CHS provided the UCO with the ½ ounce of crystal methamphetamine and the UCO in turn gave the

CHS the $700 to give to Sampsell for the crystal methamphetamine. Surveillance units observed the CHS get back into Sampsell's pick-up truck. The CHS gave the $700 to Sampsell for the ½ ounce of crystal methamphetamine. Surveillance units followed Sampsell and the CHS briefly and then surveillance was terminated. Affiant later listened to the body wire recorder worn by the CHS. Affiant heard CHS say to Sampsell here is the $700 (for the crystal methamphetamine). Also heard on the recording was the CHS asking Sampsell how much he charges for a ¼ pound (approximately 4 ounces) of crystal methamphetamine. Sampsell told CHS that it depends and then he quotes the CHS a price range for a ¼ pound of crystal methamphetamine.

On January 2, 2013, CHS had a telephonic conversation (not recorded) with Sampsell. CHS told Sampsell that CHS' "friend" (UCO) would pay $4800.00 for ¼ pound of crystal methamphetamine. Sampsell told CHS that he would make that deal.

On January 4, 2013, CHS contacted Sampsell on the telephone (Not recorded) and inquired about the ¼ pound of crystal methamphetamine that CHS' "friend" (UCO) wanted to purchase for $4800.00. Sampsell said that he would see if he could do the deal but he was not sure because his regular supplier, who was located in the Dallas area, had "rip'd" (robbed) him.

On January 9, 2013, in the presence of FBI Special Agent Keith Koncir and affiant and Jeremy Copher, CHS placed a consensual recorded telephone call to Sampsell. CHS asked Sampsell if the ¼ pound of crystal methamphetamine deal was good for the upcoming weekend. Sampsell told CHS that he really wanted to do the deal and could get it done but he was not sure if he could get that amount of crystal methamphetamine without the money (upfront).

On January 10, 2013, Sampsell contacted CHS telephonically (not recorded). Sampsell told CHS that he was in Odessa (Texas) and said that the deal was on. Sampsell told CHS that that he would be getting

the ¼ pound of crystal methamphetamine from Dallas and then he would travel to Houston on Friday or Saturday (January 12th or 13th, 2013).

On January 17, 2013, Sampsell contacted CHS from a new cellular phone number, (817)880-1991. The call was disconnected but Sampsell communicated on text message with CHS that affiant saw, and the texts from Sampsell said that he still wanted to do the deal (1/4 pound of crystal methamphetamine) but he had to make sure that he could do it. In the presence of TFO Lyons, CHS then placed a consensual recorded telephone call to Sampsell at the (817)880-1991. The call went to voicemail but Sampsell soon called the CHS back from the above referenced number. During this consensually recorded conversation, Sampsell told the CHS that he wants to do the deal (1/4 pound of crystal methamphetamine) and he was trying to get the money. Sampsell told CHS that he would let the CHS know very soon.

On January 20, 2013, Sampsell contacted the CHS telephonically (Not recorded) and told the CHS that he would be in Houston tomorrow (January 21, 2013) with the ¼ pound of crystal methamphetamine. Sampsell said that he was currently in Odessa.

On January 21, 2013, Sampsell contacted the CHS telephonically (not recorded) and told the CHS that he would be in Houston between 4:00 p.m. and 2:00 a.m. (January 22, 2013) with the ¼ pound of crystal methamphetamine. Sampsell said that he was still waiting on the "dope." CHS told Sampsell that CHS would bring the "friend" (UCO) to the motel room that Sampsell was going to rent to do the "deal" there. Sampsell said that was okay. At approximately 10:45 p.m., CHS advised affiant that Sampsell telephonically contacted the CHS (not recorded) and said he would be leaving Dallas at approximately 3:00 a.m. on January 22, 2013, for Houston. Sampsell said that he had the "dope" (1/4 pound of crystal methamphetamine).

On January 22, 2013, at approximately 7:30 a.m., CHS placed a consensual recorded telephone call to

Sampsell. Sampsell told CHS that he overslept but he would be in Houston around lunch time. CHS told Sampsell that the "deal" could be done in Conroe, where CHS and the "friend" (UCO) were at. CHS later contacted Sampsell telephonically (not recorded) who said he was running late and would be in Conroe at approximately 2:00 p.m.

At approximately 1:30 p.m., Sampsell contacted the CHS. During the consensual recorded conversation Sampsell said that he was at the Wal-Mart in Conroe (located at 1407 North Loop 336 West in Conroe, Texas). CHS told Sampsell that he and the "friend" (UCO) would be there in 10 minutes. FBI Special Agent Koncir provided the $4800 to the UCO and affiant provided a body wire recorder to the CHS. CHS got into the UCO vehicle with two UCOs. Surveillance was established at the Wal-Mart where Sampsell was observed in a Grey 4-Door Nissan with California License Plate 6WMF050. Surveillance was also maintained on the UCO vehicle as it traveled to meet with Sampsell. Surveillance observed the UCO and CHS get into Sampsell's vehicle and they departed after approximately 10 minutes. The UCO advised that he was the one who handed the $4800.00 to Sampsell and Sampsell handed him, the UCO, the ¼ pound of crystal methamphetamine.

Sampsell departed the Wal-Mart parking lot towards Interstate 45. Near the turn towards the Interstate 45 south bound feeder road, marked patrol units of the Texas Department of Public Safety and the Montgomery County Sheriff's Office activated their overhead lights in an attempt to initiate a traffic stop on Sampsell. Sampsell accelerated and attempted to evade law enforcement. A high speed pursuit was initiated by several law enforcement vehicles. During the pursuit, Sampsell was observed by several law enforcement units throwing baggies of crystal methamphetamine out of the driver's side window. Sampsell was stopped after an approximate 8 mile attempted evasion (Interstate 45 Exit 87 to 79). Sampsell was removed from the vehicle after he resisted and ignored officers' orders. Sampsell was placed under arrest. Several chards of crystal methamphetamine were observed in plain view on the driver's seat and the carpet of the driver's side floorboard, along with the $4,800 USD, and a digital

scale.

At approximately 2:45 p.m., the UCO provided affiant with the ¼ pound of crystal methamphetamine. The ¼ pound of crystal methamphetamine weighed approximately 113 grams. The crystal methamphetamine on the driver's seat and the floorboard was collected and weighed at approximately 8 grams. Both tested presumptive positive on a field test for crystal methamphetamine.

_____
Joshua D. Lyons

Office of the Inspector General

Texas Department of Criminal Justice

Sworn to before me and subscribed in my presence this 23rd day of January, 2013.

_____
Frances H. Stacy

United States Magistrate Judge