```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


UNITED STATES OF AMERICA      .    4:12-CR-272-36

VERSUS                        .    HOUSTON, TEXAS

JAMES FRANCIS SAMPSELL        .    DECEMBER 9, 2014

. . . . . . . . . . . . . .        3:36 P.M.



                     TRANSCRIPT OF SENTENCING
                  BEFORE THE HONORABLE SIM LAKE
                   UNITED STATES DISTRICT JUDGE

                            APPEARANCES


FOR THE GOVERNMENT:

     Timothy Braley
     Assistant United States Attorney
     1000 Louisiana
     Suite 2300
     Houston, Texas   77002

FOR THE DEFENDANT:

     Larry Eastepp
     LARRY D. EASTEPP PC
     5300 Memorial Drive
     Suite 1000
     Houston, Texas   77007


OFFICIAL COURT REPORTER:

     Mayra Malone, CSR, RMR, CRR
     U.S. Courthouse
     515 Rusk, Room 8004
     Houston, Texas   77002

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.
```

P R O C E E D I N G S

THE COURT: The United States versus James Sampsell, Criminal Action 12-272.

MR. BRALEY: Tim Braley for the United States, Your Honor.

MR. EASTEPP: Larry Eastepp for Mr. Sampsell.

THE COURT: Would you please state your name, sir?

THE DEFENDANT: James Sampsell.

THE COURT: Have you read the presentence investigation report before today?

THE DEFENDANT: Yes, I have.

THE COURT: Have you discussed the report with your attorney?

THE DEFENDANT: I have.

THE COURT: Your attorney has filed a number of objections. I have read the objections, the government's response and your rebuttal. The objection to trafficking in firearms is Racketeering Act number one. It appears to have some merit, and I understand the parties have further discussion about that?

MR. EASTEPP: It is my understanding that it will be withdrawn.

MR. BRALEY: The objection will be withdrawn?

MR. EASTEPP: No. That conduct withdrawn from being considered.

1          MR. BRALEY:  There is an agreement that that
2  Racketeering Act should not count for the calculation.
3          THE COURT:  The Racketeering Act one will not count.
4  The objection to paragraphs 34 and 43 dealing with the type and
5  amount of methamphetamine is denied.  The objection to the
6  obstruction of justice paragraph, number 47, is denied, and the
7  objections to criminal history is denied.
8          Based on the sustaining Racketeering Count Number
9  One, it appears that the total offense level would be 29, the
10 criminal history category would be five and the advisory
11 guideline range would be 140 to 175 months.
12         Do counsel and the probation officer concur in
13 that result?
14         MR. BRALEY:  Yes, Your Honor.
15         MR. EASTEPP:  Yes.  I think with sustaining that
16 objection, that is where we would be.
17         THE PROBATION OFFICER:  Yes, Your Honor.
18         THE COURT:  I have also read the sentencing memorandum
19 and request for a variance.
20         Mr. Sampsell, you may now make a statement and
21 present any information in mitigation, and I will let the
22 government's lawyer speak and your lawyer speak.
23         THE DEFENDANT:  Well, Your Honor, when I entered into
24 this plea with the government, I was expected to abide by the
25 terms and the information included in the plea agreement, and I

1  also expect that the government to be held to that same
2  standard.  And I feel that the gun -- the gun thing, that was a
3  big issue with me because that was in previous pleas and I
4  didn't agree to it, so, you know, we are stepping in the right
5  direction.  I still felt that the type of methamphetamines was
6  worded deliberately by the government in the plea to say
7  "methamphetamines" and not "methamphetamine" actual, so I felt
8  that that is how I would be sentenced.  I don't know if that
9  was just a misunderstanding on my part, how that worked, but I
10 thought that that was -- how it was worded would be how I would
11 be sentenced.
12             THE COURT:  Well, the facts that you pled guilty to
13 describe the date of the transactions and the amount sold and
14 the buyers and then the other information provided in the
15 presentence investigation report, the factual information, to
16 which there is no objection, shows the type of methamphetamine
17 it was.  So I explained to you in great detail at the
18 rearraignment that nobody knew what the guideline range would
19 be because the probation officer hadn't begun the process.  And
20 I asked you if anybody promised you what sentence you would
21 receive or what the guideline range would be, and you told me
22 no.
23             THE DEFENDANT:  Yes, sir, I did.
24             THE COURT:  So you're bound by the plea agreement and
25 the facts that are in the presentence report, which are not

1    disputed, or disputable.
2              Any other objections?
3              THE DEFENDANT:  No, sir.
4              MR. EASTEPP:  I just want to make sure he understands
5    he can make a further statement to the Court.
6              THE COURT:  Yeah.  I was going to tell him that.  You
7    may now make a statement and present any information in
8    mitigation, and then I will let the government's lawyer speak
9    and your lawyer speak.
10             THE DEFENDANT:  I don't really think there is anything
11   else to say, Your Honor.  I did what I did.  I accept the
12   responsibility for the things that I did.  Thank you.
13             THE COURT:  Mr. Braley?
14             MR. BRALEY:  Judge, the government requests a sentence
15   within the guideline range as determined by the Court.  To be
16   fair and consistent with other recommendations, the United
17   States recommends a sentence towards the lower end of that
18   guideline range.
19             MR. EASTEPP:  Judge, I have a couple areas I would
20   like to cover.  I know you denied the objection on the amount.
21   I'm not about to reargue that, but within that objection, I
22   also cited a Ninth Circuit case that is pre-Booker, pre-Gall,
23   where the Ninth Circuit said when you have a middleman in a
24   drug transaction, it may be that the district court wants to
25   consider a departure when the middleman can't control the

1  purity of the drugs that he is buying.  And it is clear even
2  from reading the facts in a light most favorable to the
3  government as to how these transactions went down that are the
4  racketeering acts that he has pled guilty to that are contained
5  within the presentence report, that he is telling the agents in
6  the undercover calls, particularly as to those last drugs that
7  have the highest purity, that I'm trying to raise the money and
8  I'm then going to go buy the drugs and then I'm going to drive
9  them back down to Conroe.  It's a classic middleman situation
10 when you read -- again, in a light most favorable to how the
11 government laid those facts out.  It then became happenstance
12 that he found -- the person he bought them from had really good
13 pure methamphetamine.  That was a pure happenstance for
14 Mr. Sampsell so -- and I'm not asking for some sort of huge
15 movement on this, Judge, but I ask, first, that you consider
16 that in your ultimate decision.
17             Secondly, this is what I have hit on in the
18 sentencing memorandum that goes back to this presentence report
19 that is full of this information that from the time this man
20 has been 14, he has been on some sort of drug, drinking.  And
21 when you look at his criminal history, which is lengthy, it's
22 not lengthy with violent crimes.  It's lengthy with drug
23 crimes.  There has only been a couple in here that didn't score
24 but that are something other than either marijuana or
25 methamphetamine.  And as he got into his 20s and 30s, it is

1   almost all completely methamphetamine.  He has never had longer
2   than a seven-year prison sentence at any time, which means
3   every assistant district attorney that stood in front of a
4   state district judge, to sentence him on every one of those
5   charges to everything that we know today, that he was standing
6   there as a drug user and he keeps getting these what looked
7   like favorable plea bargains -- and they are favorable -- but
8   they are favorable when you look back at what the facts of
9   these offenses are that he has been convicted for.  They are
10  user quantities of drugs that clearly backs up that he has been
11  an untreated meth addict for years and years, including -- for
12  the very last offense that he was convicted for that is
13  contained on page -- I think it is 28 of the -- and paragraph
14  85 where it says, "Once the police get him out of the car and
15  look, a search of the vehicle's console revealed a substance to
16  be methamphetamine and several needles."
17              It's not, "We searched the car and found several
18  packages, prepackaged, that is normally found to be resold into
19  the market."  It's needles and drugs for him to use.  And he
20  goes back to the penitentiary, and that is 10 years ago when he
21  was 42.  And if you back up from that offense, all the way
22  to -- including one of the racketeering acts that is paragraph
23  32 that came from an individual named William Maynard, that's
24  on page 16, it says "Maynard ordered Sampsell to kill Lamphere
25  and gave Sampsell a gun and money.  Maynard learned that

1  Sampsell used the money and sold the gun in exchange for
2  drugs."  So even within this Aryan Brotherhood thing, the drugs
3  have been a controlling factor.  If you read that, that he is
4  supposed to be going and doing something, he goes and sells the
5  gun because his meth addiction is so bad that he is even
6  ignoring this Aryan Brotherhood order that he is given.
7         In fact, in that particular incident, he ended up
8  being shot himself seven times, but I have cited in the
9  sentencing memorandum -- and I know you have read every word of
10 it -- what Judge Saris said recently in her role as the
11 Chairman of the Sentencing Commission about drug offenses and
12 drug offenders and then when you look at the studies for meth
13 offenders, he is classically a meth user who has never gotten
14 real treatment.  And that's the man who stands in front of you.
15 This man today is 52 years old.  Whatever sentence you give
16 him, if you give him the sentence that Mr. Braley just asked
17 for, he is going to be close to Social Security age.  He is
18 going to be 64 or so if he gets the low end of the sentence as
19 it's calculated right now.  You know, he is going to be an old
20 man when he comes out.  This is going to be his first real
21 lengthy prison sentence in what is his, quote, long criminal
22 career.  What he needs is drug rehabilitation because I think
23 between drug rehabilitation -- because he is not on meth.  The
24 presentence investigation report backs up that in this last
25 stretch before he was arrested here on this federal case that

1  he was working both -- he had an electrician's job and he was
2  working on an oil rig until he had a bad accident and his left
3  hand was hurt working on the top of the rig where he was
4  knocked out and knocked off the top of the rig.  Vito Corleone
5  was living on a big estate in Long Island directing a big
6  criminal enterprise.  The man that they say he is was on top of
7  a rig in Odessa, Texas and got knocked off when a pipe burst
8  back out on him.  He is out working a working man's job, so the
9  man who is not on methamphetamine has been known to work, and
10 that is including in the recent past.  So, Judge, I think a --
11 and when you also look as his criminal history, as I argued,
12 that if you -- that two of those -- in 1997, the revocation
13 occurred on the same day and he gets six points.  If they were
14 considered one and it dropped just one category -- I think his
15 criminal history is overstated.
16         THE COURT:  They're overstated?  There must be 10
17 convictions not included because of age.
18         MR. EASTEPP:  You're right, Judge.  But, I mean, the
19 law took care of those.  There is no reason to consider those.
20 They are all based on his drug addiction.  This is a man that
21 has never had any sort of drug addiction.  Judge, I think a
22 slight variance -- and, again, I'm not asking --
23         THE COURT:  How did he get to be a general in the
24 Aryan Brotherhood if he is so incompetent?
25         MR. EASTEPP:  Maybe it's the last man standing.  The

1    government had everybody else in custody by the time -- and it
2    is clear from the facts, had he maybe not wandered down here
3    into this meth deal, he might not have ever been indicted
4    because they didn't put him in that first indictment.  We will
5    never know, but --
6              THE COURT:  Mr. Braley, do you want to respond to any
7    of this?
8              MR. BRALEY:  No, Your Honor.
9              THE COURT:  All right.  I don't think that a variance
10   or downward departure is warranted under this case.  He has got
11   a lengthy history of convictions.  I agree they are drug
12   convictions, but I think the lower end of the guideline range
13   takes care of your arguments.
14             I sentence you to 140 months in custody to be
15   followed by five years of supervised release.  You will
16   cooperate in the collection of a DNA sample.  You will not
17   possess a firearm, ammunition, destructive device or dangerous
18   weapon.  You will participate in a program of drug and/or
19   alcohol treatment and testing as instructed and deemed
20   necessary by the probation officer.  Because you do not have an
21   ability to pay a fine, no fine will be imposed.  You will pay
22   now the mandatory $100 special assessment.
23             I have granted the government's motion to dismiss
24   the remaining count.
25             Mr. Eastepp, has the government complied with the

1  plea agreement?
2          MR. EASTEPP:  Yes, Your Honor.
3          THE COURT:  Under the plea agreement, you have no
4  right to appeal.
5              Does either counsel wish to say anything else?
6          MR. BRALEY:  No, Your Honor.
7          MR. EASTEPP:  He would request, Your Honor, if you
8  would make a recommendation to El Reno FCI.
9          THE COURT:  I will make that recommendation.  You are
10 remanded to the custody of the marshal.  Counsel are excused.
11      *(Proceedings concluded at 3:49 p.m.)*
12                          * * * *
    *I certify that the foregoing is a correct transcript from*
13 *the record of proceedings in the above-entitled cause.*
14 *Date: August 3, 2015*
15
                            */s/ Mayra Malone*
16                          ---------------------------------------
                            *Mayra Malone, CSR, RMR, CRR*
17                          *Official Court Reporter*